[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-10971
_____

BIA No. A18-170-979

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 27, 2006
THOMAS K. KAHN
CLERK

YURG BIGLER,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

(March 27, 2006)

Before EDMONDSON, Chief Judge, BLACK and FAY, Circuit Judges.

PER CURIAM:

This is an immigration case in which Yurg Bigler (Bigler) petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. The BIA affirmed the immigration judge's ("IJ") oral decision, which found Bigler removable pursuant to 8 U.S.C. § 1227, INA § 237(a)(1)(A). Specifically, the IJ found that Bigler clearly abandoned his status as a lawful permanent resident ("LPR") of the United States and that he did not possess a valid immigrant visa upon re-entry. We affirm and find that substantial evidence supports the ruling.

## I. Background

Bigler, a citizen of both Colombia and Switzerland, was originally admitted into the United States by the Immigration and Naturalization Service ("INS")[1] as an LPR on or about July 14, 1968. Bigler was five at the time he acquired LPR status. He resided in the United States with his parents and his brother until 1988, when Bigler's parents asked him to look after the family farm in Colombia. Bigler subsequently moved to Colombia shortly after marrying a Colombian citizen and, while there, had children and purchased a home.

---

[1] The Homeland Security Act ("HSA"), effective November 25, 2002, created the Department of Homeland Security ("DHS") and abolished the INS. Pub. L. No. 107-296, 116 Stat. 2135. The HSA transferred INS functions to the DHS. This case was initiated while the INS was still in existence. We therefore refer to the INS rather than the DHS as the relevant agency.

Bigler resided in Colombia for over seven years.[2] He stated that during the early years of his residency in Colombia, he experienced difficulty re-entering the United States using his LPR card. According to Bigler, this ultimately led him to sign a document at the United States Consulate in Bogota, Colombia on October 31, 1990 abandoning his LPR status, apparently to facilitate re-entry into the United States. The document indicated that Bigler voluntarily abandoned his LPR status as of January 1988. The stated reason for abandonment was that he had not been back to the United States prior to one year. Bigler surrendered his alien registration card at this time, and the Consulate issued him a visitor's visa. This allowed him to re-enter the United States.

Bigler testified that there was some discrepancy with the birth date on his LPR card and that the INS officer told him simply to sign the form and he would receive a visitor's visa. He testified that he understood the visitor's visa would allow him to re-enter the United States, at which point Bigler intended to correct the situation with his birth date. Bigler further testified that he did not know he was abandoning his residence in the United States by signing the form. Instead, he

---

[2] The Code of Federal Regulations defines the term "residence" as follows:

[A]n alien's residence is the same as that alien's domicile, or principal actual dwelling place, without regard to the alien's intent, and the duration of an alien's residence in a particular location is measured from the moment the alien first establishes residence in that location. 8 C.F.R. § 316.5(a).

understood that the visitor's visa would allow him to re-enter the United States so that he could correct the birth date on his LPR card.[3]

Bigler lived in Colombia from January 1988 until December 1995. He testified that during this time, he went "back and forth" to the United States using his visitor's visa. At some point, Bigler divorced, and his two children came to the United States.[4] Bigler testified that in the year 2000, he entered the United States using his visitor's visa and met with an INS officer in Atlanta, Georgia. According to his testimony, Bigler left this meeting with the impression that he would receive a replacement LPR card due to the confusion with his date of birth. He further testified that he waited for the card for eight or nine months and, not having received the card, met with an INS officer in Tampa, Florida to inquire about the delay. Bigler received a replacement LPR card in the year 2000.

Bigler had also filed an application for naturalization with the INS office in Tampa, Florida on or about October 6, 1997. The preliminary naturalization interview took place on November 6, 2000. On April 16, 2001, the INS officer conducting the interview denied Bigler's application for naturalization based on his lack of continuous residence in the United States and his abandonment of LPR

---

[3] It is clear from the record that Bigler could speak and read Spanish.

[4] They now live with their mother who is married to a United States citizen. His children are both lawful permanent residents of the United States.

4

status in October 1990.

On February 19, 2002, Bigler made a sworn statement to the INS in Tampa, Florida in which he acknowledged that he lived in Colombia from January 1988 to December 1995, and that he applied for a visitor's visa in the year 1995. Bigler did not contest a statement by the INS interviewing officer that he had abandoned his United States residency when he signed the form on October 31, 1990 in Bogota, Colombia.

On November 29, 2002, the INS served Bigler with a notice to appear, thereby commencing removal proceedings in the Orlando immigration court. See 8 C.F.R. § 3.14(a)(2002). The notice stated that Bigler was last admitted to the United States as an LPR on or about July 14, 2000, that Bigler intended to remain permanently or indefinitely in the United States at that time, and that Bigler was therefore subject to removal from the United States pursuant to INA § 237(a)(1)(A) because he was inadmissible by law at the time of entry.[5]

_____

[5]The charge read specifically as follows:

Section 237(a)(1)(A) of the Immigration and Nationality Act - in that at the time of entry or adjustment of status you were within one or more classes of alien[s][in]admissible by law, to wit: alien immigrants who are not in possession of a valid unexpired immigrant visa, re-entry permit, border crossing identification card or other valid entry document required by the Act, or who are not in possession of a valid unexpired passport or other suitable travel document or identity or nationality document... as required by regulations issued by the Attorney General pursuant to Section 212(a)(7)(A)(i) of the Immigration and Nationality Act.

5

On May 21, 2003, Bigler appeared before an IJ and denied several factual allegations contained in his notice to appear. Bigler also did not concede removability as charged. The proceeding was adjourned, and a contested removability hearing was held on November 7, 2003.[6] The government submitted the following evidence of Bigler's removability at the November 2003 hearing: (1) Bigler's immigration and alien registration form completed when he first entered the United States in 1968; (2) the INS decision dated April 16, 2001 determining that Bigler was ineligible for naturalization; (3) the INS record of Bigler's sworn statement dated February 19, 2002; (4) Bigler's Colombian and Swiss passports; (5) the INS form entitled "Abandonment of Legal Status as Permanent Resident," signed by Bigler, and dated October 16, 1990; and (6) Bigler's LPR card, which states that it has been valid since 1968 and will expire in 2009.

The IJ of the contested removability hearing found that the government clearly established Bigler's removability. The IJ made a credibility determination that Bigler's claimed lack of knowledge as to the import of signing the abandonment form was not believable, particularly in light of the corroborating

---

[6] Bigler argues that the IJ erred by failing to consider the fact that the INS reissued Bigler's LPR card. There is no evidence, however, that the INS at that time considered all of the facts that were before the IJ here. Moreover, the INS issued a decision in April 2001 determining that Bigler was ineligible for naturalization due to lack of continuous residence in the United States and to his signing of an abandonment form in October 1990.

information contained in his sworn statement. The IJ further noted Bigler's

marriage to a Colombian native in 1987, and the birth of his two children. Based

on the foregoing evidence, the IJ sustained the charge of removability against

Bigler pursuant to INA § 237(a)(1)(A).

Bigler appealed the IJ's decision to the BIA and on January 31, 2005, the

BIA affirmed without opinion. Bigler now appeals the BIA's affirmance of the IJ's

removability determination.

## II. Discussion

We review the IJ's underlying decision rather than the BIA's determination

because the BIA affirmed without an opinion. See Sepulveda v. U.S. Atty. Gen.,

401 F.3d 1226, 1230 (11th Cir. 2005)("When the BIA summarily affirms the IJ's

decision without an opinion, the IJ's decision becomes the final removal order

subject to review"). In the proceedings before the IJ, the INS had the burden of

establishing Bigler's removability by clear and convincing evidence. INA §

240(c)(2)(A), 8 U.S.C. § 1229a(c)(3)(A). This Court reviews the IJ's factual

findings and credibility determinations as to whether the INS presented clear and

convincing evidence of removal under the substantial evidence test. See

Farquharson v. U.S. Atty. Gen., 246 F.3d 1317, 1320 (11th Cir. 2001). The

substantial evidence test requires reversal of factual findings only if the evidence

7

presented compels a contrary conclusion. Id. We "must affirm the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Sepulveda, 401 F.3d at 1230 (citations omitted). We review the IJ's statutory interpretation *de novo*, but defer to the IJ's interpretation if reasonable. Farquharson, 246 F.3d at 1320.

We conclude that substantial evidence supports the IJ's determination that petitioner intended to abandon his LPR status. This circuit has not set forth a specific standard for determining whether or not a resident intended to abandon his or her LPR status, however, other circuits have articulated factors which may be considered in making this determination. The first and fifth circuits have noted that, "[t]o qualify as a returning resident alien, an alien must have acquired lawful permanent resident status in accordance with our laws, must have retained that status from the time that [he] acquired it, and must be returning to an unrelinquished lawful permanent residence after a temporary visit abroad." Moin v. Ashcroft, 335 F.3d 415, 418 (5th Cir. 2003)(citations omitted); see also Katebi v. Ashcroft, 396 F.3d 463, 466 (1st Cir. 2005). Where, as here, petitioner's absence is not relatively short in duration, petitioner must show "a continuous, uninterrupted intention to return to the United States during the entirety of his visit." Singh v. Reno, 113 F.3d 1512, 1514 (9th Cir. 1997). Finally, petitioner's

desire to remain a permanent resident, without more, is insufficient to demonstrate his intent; petitioner's intent must be supported by his actions. Id.

Substantial evidence supports the IJ's conclusion that the government presented clear and convincing evidence of Bigler's intent to abandon his LPR status. To begin with, Bigler signed a form entitled, "Abandonment of Legal Status as Permanent Resident." The IJ made a credibility determination, consistent with the evidence presented, that Bigler signed the abandonment form knowingly. Bigler also made a sworn statement to the INS, dated February 19, 2002, acknowledging that he lived in Colombia from January 1988 until December 1995. In that statement, Bigler did not contest the fact that he had abandoned his resident card in the year 1990. Bigler also applied for a visitor's visa in 1995.

Finally, Bigler's actions during his absence from the United States support the IJ's finding of intent. Not only did Bigler live and work in Colombia for an extended period of time, but he also married a Colombian citizen and had children there. Bigler did not attempt to correct any problems with his LPR status until after he divorced and returned to the United States. Moreover, contrary to Bigler's testimony, the documentary evidence suggests that he allowed one year or more to elapse between his visits to the United States. Although the government had the burden of proving that Bigler intended to abandon his LPR status, lawful

9

permanent residency in the United States still requires some effort to maintain.[7] The evidence suggests that Bigler not only allowed significant periods of time to elapse between visits, but he also signed a form abandoning his LPR status in the year 1990. The IJ considered all of the foregoing evidence, including Bigler's testimony, and determined that Bigler intended to abandon his LPR status. We find that substantial evidence supports this conclusion.

### III. Conclusion

The IJ's determination that the petitioner intended to abandon his status as a lawful permanent resident of the United States is clearly supported by the evidence in this case. Moreover, the evidence does not compel the contrary conclusion that petitioner's intention to return to the United States remained uninterrupted during the time of his residency, marriage, and employment in Colombia. Unfortunately for the petitioner, his present desire to maintain a permanent residency is insufficient to overcome the fact that he previously abandoned his LPR status. We therefore affirm the BIA's decision to adopt and affirm the IJ's oral decision.

**Affirmed.**

---

[7]The Code of Federal Regulations states the following with regard to maintaining permanent residency:

> Absences from the United States for continuous periods of between six (6) months and one (1) year during the periods for which continuous residence is required under § 316.2(a)(3) and (a)(6) shall disrupt the continuity of such residence for purposes of this part unless the applicant can establish otherwise to the satisfaction of the Service. 8 C.F.R. 316.5(c)(1)(i).